# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **MICHELLE OFFREDO,** | CASE NO. 1:21-cv-00523-PAB |
| **Plaintiff,** | |
| -vs- | JUDGE PAMELA A. BARKER |
| **GREENSKY, LLC,** | |
| **Defendant.** | MEMORANDUM OPINION AND ORDER |

Currently pending is Defendant GreenSky, LLC's Motion to Dismiss Plaintiff Michelle Offredo's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 4.) Plaintiff Michelle Offredo filed a Brief in Opposition on April 5, 2021, to which Defendant replied on April 19, 2021. (Doc. Nos. 5, 6.) For the following reasons, Defendant's Motion to Dismiss is granted.

## I. Background

Plaintiff Michelle Offredo ("Offredo") brings a single claim of civil conspiracy against Defendant GreenSky, LLC ("GreenSky") on her behalf, as well as on behalf of all other Ohio residents similarly situated. (Complaint, Doc. No. 4-1, ¶¶ 1-11, 32-38.)

Offredo alleges that she received a postcard in the mail from a company called Superior Healthcare in or around August 2018. (Doc. No. 4-1, ¶ 19.) Superior Healthcare's postcard advertised an upcoming seminar about the use of "stem cell therapy" for back pain. (*Id.*) Offredo, who suffered from severe daily back pain, made an appointment with Superior Healthcare to learn more about Superior Healthcare's treatment. (*Id.* at ¶¶ 21-25.) According to Offredo, she reviewed Superior Healthcare's website prior to her appointment and saw that Superior Healthcare promised "a safe, effective and proven therapy." (*Id.* at ¶ 22.) Offredo alleges that she was desperate to obtain

relief from her severe back pain. (*Id.* at ¶ 21.) However, Offredo could not afford the $10,000 it would cost to obtain Superior Healthcare's supposed stem cell treatment. (*Id.* at ¶ 23.) Therefore, according to Offredo, "Superior Healthcare arranged for the financing of the $10,000 treatment through Defendant [GreenSky] on the spot." (*Id.* at ¶ 24.) Offredo alleges that she could never have afforded Superior Healthcare's treatment if it had not been for the financing she received through GreenSky. (*Id.* at ¶ 25.)

Although Offredo does not explicitly allege it in her Complaint, it can be surmised that Superior Healthcare's treatment did not alleviate Offredo's back pain. Offredo alleges that GreenSky "supports entities like Superior [Healthcare] and others which falsely and fraudulently advertised and represented to Plaintiff and others that 'stem cell' therapy procedures treat a litany of serious diseases, is risk free and never fails, and that stem cell products are an approved safe treatment for their problems, when in fact they are both unapproved and without clinical support." (*Id.* at ¶ 10.) Offredo further alleges that GreenSky "arranges for the funding of these procedures even though it knows or should know they are bogus and have serious potential for adverse risks, are not FDA approved, and that no studies have proven that their product is safe or effective." (*Id.* at ¶ 11.) According to Offredo, despite condemnation of stem cell "treatments" by medical experts, as well as by the New York Attorney General, GreenSky "continues to fund these fraudulent unlawful practices solely for profit," and that, without GreenSky's funding, "these unlawful and immoral practices could not occur." (*Id.* at ¶¶ 12-17.) Offredo alleges that GreenSky injured her, as well as other Ohio residents, by conspiring with stem cell entities to fund fraudulent stem cell treatments that are unproven, potentially dangerous, and which lack clinical evidence. (*Id.* at ¶ 18.) Offredo alleges that GreenSky "conspired

2

with Superior Healthcare and preyed on Plaintiff, who was in a desperate state," and that Offredo suffered harm as a result. (*Id.* at ¶¶ 28-29.)

GreenSky removed the instant matter to this Court on March 5, 2021. (Doc. No. 1.) On March 12, 2021, GreenSky filed a Motion to Dismiss Offredo's Complaint under Fed. R. Civ. P. 12(b)(6). (Doc. No. 4.)

II. **Standard of Review**

GreenSky moves to dismiss Offredo's Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555-56, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint

3

states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

### III. Analysis

"In Ohio, a civil conspiracy consists of the following: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446 (6th Cir. 2012) (quoting *Universal Coach, Inc. v. N.Y.C. Transit Auth., Inc.*, 90 Ohio App.3d 284, 629 N.E.2d 28, 33 (1993)). The plaintiff "need not demonstrate an explicit agreement but only an understanding or common design between the parties to commit an improper act." *Id.* (citing *Gosden v. Louis*, 116 Ohio App.3d 195, 687 N.E.2d 481, 496 (1996).

"An underlying unlawful act is required before a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998) (citing *Gosden*, 116 Ohio App.3d at 219, 687 N.E.2d at 496). "The malice involved in the tort is 'that state of mind under which a person does

a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'" *Id.* (quoting *Pickle v. Swinehart*, 170 Ohio St. 441, 443, 166 N.E.2d 227, 229 (1960)). Given "the intrinsic necessity of both intent and agreement there can be no negligent conspiracy or, conversely, conspiracy to commit negligence." *Hunt v. City of Toledo Law Dep't.*, 881 F. Supp. 2d 854, 880 (N.D. Ohio 2012). Since there can be no agreement to commit negligence, a civil conspiracy must be a conspiracy to commit some type of underlying intentional tort. *Id.* (citing *Bevan Group 9 v. A–Best Products Co.*, 2004 WL 1191713, at *8 (Ohio Common Pl., Cuyahoga County, May 17, 2004)).

A conspiracy claim "must be pled with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Avery v. Rossford, Ohio Trans. Improvement Dist.*, 145 Ohio App.3d 155, 165, 762 N.E.2d 388, 395 (Ohio App. 6th Dist. 2001).

For the following reasons, the Court concludes that Offredo fails to state a claim for conspiracy. Offredo's Complaint, on its face, contains insufficient factual allegations to support her conspiracy claim. In her Complaint, Offredo alleges that GreenSky's website indicates that GreenSky provides financing solutions for businesses that provide medical procedures to consumers. (Doc. No. 4-1, ¶¶ 4-5.) She further alleges that GreenSky "conspired with Superior Healthcare and preyed on Plaintiff, who was in a desperate state," and also that "GreenSky conspired with the stem cell providers to injure and defraud stem cell recipients by providing the funding" for the stem cell procedures. (*Id.* at ¶ 28, 44.) These allegations do not contain facts, but instead are vague legal conclusions "masquerading as factual allegations." *Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010)). The Court declines to accept these legal conclusions as true. *Id.* (rejecting the plaintiff's

5

vague, conclusory allegation that "Defendants have conspired among themselves and with others unnamed in the [MNPS] system to knowingly and intentionally deny [Heyne]'s constitutional rights."); *see also Loyd v. Huntington Nat. Bank*, No. 1:08-cv-2301, 2009 WL 1767585, at *13 n. 33 (N.D. Ohio Jun. 18, 2009) (concluding that the "[p]laintiff's allegation that 'unknown employees . . . maliciously conspired with Carpenter . . .' [was] insufficient to satisfy the pleading requirements for conspiracy to commit fraud" because it stated "no actual facts and [was] far too vague to allow the Defendants to investigate and defend themselves against the charge"); *Avery*, 762 N.E.2d at 395.

Offredo's allegations do not indicate the existence of a "malicious combination" between GreenSky and Superior Healthcare to achieve the common objective of perpetrating fraud against Offredo. *See, e.g., Gilreath*, 2010 WL 6513412 at *10 (concluding the plaintiff's "vague and conclusory allegation that [an alleged co-conspirator] was 'associated with' allegedly unlawful conduct by [the defendant] does not meet" the standard set out under *Iqbal*); *see also Bickerstaff v. Lucarelli*, 830 F.3d 388, 400-01 (6th Cir. 2016) (same). Even accepting as true that GreenSky offers consumer financing options via businesses like Superior Healthcare, this does not equate to a shared objective with Superior Healthcare to defraud Offredo. Offredo alleges no facts that any such agreement between GreenSky and Superior Healthcare was intended to commit fraud. Such an unsupported inference is insufficient to support a conspiracy claim. *See Hunt v. City of Toledo Law Dep't.*, 881 F. Supp. 2d 854, 880-81; *see also Loyd*, 2009 WL 1767585, at *13. Thus, Offredo's failure to "plead a plan or agreement" between GreenSky and Superior Healthcare is "fatal to [her] conspiracy claim." *Heyne*, 655 F.3d at 564.

Additionally, to the extent Offredo alleges that GreenSky knew or should have known that Superior Healthcare's "treatment" was bogus, such a claim fails because it sounds in negligence and

6

parties cannot conspire to commit negligence. *Hunt*, 881 F. Supp. 2d at 880 (citing *Bevan Group 9 v. A-Best Products Co.*, 2004 WL 1191713 (Ohio Common Pl., Cuyahoga County, May 17, 2004)) ("Since there can be no agreement to commit negligence, a civil conspiracy must be a conspiracy to commit some type of underlying intentional tort."). Offredo alleges that GreenSky "*knows or should know*" that Superior Healthcare's stem cell treatment was "bogus . . . ." (Doc. No. 4-1, ¶ 11, emphasis added.) As a matter of law, two parties cannot conspire to commit negligence, because conspiracy requires both intent and agreement. *Hunt*, 881 F. Supp. 2d at 880. Therefore, to the extent that Offredo claims that GreenSky conspired to negligently lend Offredo money for Superior Healthcare's bogus therapy, such a claim fails as a matter of law. *Id.*

Offredo's reliance on *Williams v. Aetna Fin. Co.* is not persuasive. In *Williams*, the plaintiff, Williams, hired a housing contractor, Blair, to perform several improvements on her home. *Williams*, 83 Ohio St.3d at 466. One of Blair's employees transported Williams to the office of the defendant, ITT Financial Services, to obtain a loan to finance the home repairs. *Id.* Blair never performed the work on Williams's house. *Id.* At trial, the jury "specifically found that ITT participated in a conspiracy" with Blair that "damaged Williams." *Id.* The Ohio Supreme Court concluded that the jury "reasonably determined on the sum total of the evidence presented that employees of ITT conspired with Blair to defraud Williams, with resulting damages to her." *Id.* at 476. According to the *Williams* court, the jury heard testimony from ITT managers who admitted that Blair's financial problems were "well known among ITT employees for a significant time before" Williams received her loan. *Id.* The jury also heard testimony that ITT employees referred to loans, such as the one Williams received, as "Blair loans," which had a "specific, highly negative connotation among employees of ITT," and that Blair had a close relationship with several ITT employees. *Id.* The

7

court concluded that the record "provide[d] ample support for the jury's verdict" that ITT conspired with Blair to defraud Williams. *Id.*

Offredo argues that *Williams* demonstrates that "the type of facts asserted by [Offredo] are sufficient to prove a civil conspiracy." (Doc. No. 5, PageID# 71.) The Court agrees with Offredo that a company's provision of financing to a customer for an allegedly fraudulent service *could* be an act in support of a civil conspiracy. However, *Williams* does not support Offredo's position. First, *Williams* does not address the sufficiency of a complaint with respect to civil conspiracy claims. Second, in *Williams*, the jury not only considered evidence that ITT lent money to Williams for Blair's work, but also other evidence that demonstrated ITT's and Blair's intent to defraud customers like Williams, as well as ITT's longstanding knowledge of Blair's fraudulent practices. *Williams*, 83 Ohio St.3d at 476. Here, Offredo only alleges that GreenSky lent her money for Superior Healthcare's treatment. As discussed *supra*, Offredo fails to allege with any specificity that GreenSky had knowledge that Superior Healthcare's procedure was bogus,[1] let alone any facts that GreenSky and Superior Healthcare intended to defraud Offredo through an understanding or common design. On its own, Offredo's allegation that GreenSky lent money to Offredo for Superior Healthcare's procedure is insufficient to support her civil conspiracy claim.

Therefore, the Court concludes that Offredo's Complaint, on its face, fails to sufficiently state a civil conspiracy claim and must be dismissed.

---

[1] Even if Offredo had sufficiently alleged that GreenSky knew of Superior Healthcare's alleged fraud—which she does not—such knowledge "does not equate to a shared objective to commit the fraud." *Loyd*, 2009 WL 1767585, at *13. *See also Aetna Cas. and Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 538-39 (concluding that, while it was reasonable for the jury to infer, based on circumstantial evidence, that one alleged co-conspirator knew that another "was engaging in tortious conduct, it was unreasonable for the jury to further infer that [the defendant] 'agreed to join in' his scheme.")

**IV. Conclusion**

Accordingly, for the reasons set forth above, GreenSky's Motion to Dismiss (Doc. No. 4) is GRANTED. Offredo's Complaint is DISMISSED in its entirety.

**IT IS SO ORDERED.**

Date: July 9, 2021

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE